23 F.3d 402
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Anthony H. REAVES, Plaintiff-Appellee,
v.
J.J. O'NEILL, individually and as a police officer and
employee of the City of Columbia, South Carolina,
Defendant-Appellant,
and
City of Columbia, South Carolina, a public body corporate;
Richland County, South Carolina, a public body corporate;
Graydon V. Olive, Jr., City Manager of the City of Columbia,
South Carolina; Robert A. Wilbur, Chief of Police and
Administrator of Penal Facilities of the City of Columbia,
South Carolina; Richard Roe; John Does, individually and as
correctional officers of the Richland County/City of
Columbia Detention Center and employees of Richland County,
South Carolina and of the City of Columbia, South Carolina,
Defendants.
 No. 93-1641.
 United States Court of Appeals, Fourth Circuit.
 Argued March 10, 1994.
Decided May 4, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, District Judge. (CA-91-820-3)
 Danny Calvert Crowe, Turner, Padget, Graham & Laney, P.A., Columbia, SC, for appellant.
 John Roy Harper, II, John R. Harper, II, Attorney at Law, P.A., Columbia, SC, for appellee.
 D.S.C.
 VACATED AND REMANDED.
 Before HALL and LUTTIG, Circuit Judges, and BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant J.J. O'Neill, a Columbia, South Carolina, police officer, appeals from the district court's denial of summary judgment on appellee Anthony H. Reaves' 42 U.S.C. Sec. 1983 and state law claims.[1] Concluding that the district court erred in holding that Officer O'Neill was not entitled to qualified immunity on Reaves' claims, we vacate the judgment below and remand with instructions that summary judgment be entered for Officer O'Neill on those claims.
 
 I.
 
 2
 On March 24, 1989, Officer O'Neill was on duty as a uniformed patrol officer, driving a marked City of Columbia police car. At approximately 9:30 p.m., he responded to a police radio report of a shooting involving a father and son who had had an argument. The father had shot at his son and chased him down the street. Officer O'Neill drove to the scene of the crime and found another police officer talking to the son, who was a black male. Officer O'Neill learned that the address of the victim's father was 2230 Rembert Street. No description of the father's clothing was given. J.A. at 53-54.
 
 
 3
 Officer O'Neill drove to 2230 Rembert Street but found no one there. He then began looking for the father in the immediate vicinity of the crime. About an hour later, when he was still just a few blocks from both the shooting scene and the suspect's residence, he observed Reaves, who himself is black, walking with another black male. Officer O'Neill had never seen Reaves before, but he believed that Reaves looked old enough to be the shooting suspect.[2] Reaves was also the first person meeting the father's description whom Officer O'Neill had observed in the area since the shooting. Id. at 54.
 
 
 4
 Officer O'Neill stopped his vehicle and approached Reaves, intending to ask him where he lived. He told Reaves' companion, Anthony Mitchell, to "go on about his business," and Mitchell walked away. Id. at 68. Officer O'Neill then instructed Reaves to put his hands onto the patrol car, and patted him down for weapons. Id. When he asked Reaves where he lived, Reaves answered "2237 Rembert Street," but, as Reaves admitted in his deposition, Officer O'Neill heard him as saying "2230 Rembert Street." Id. at 69. While Officer O'Neill was patting him down, Reaves protested his detention several times, noting that he had been wrongfully arrested in the past and stating that "you all need to leave me alone and quit bothering me, you all need to quit harassing me." Id. at 54-55. According to Officer O'Neill's affidavit, during this time Reaves acted suspiciously and began trembling nervously. Id. at 55.[3]
 
 
 5
 At some point during the pat-down, Reaves dropped his hands from the patrol car to his sides. Id. at 71. When Reaves did this, Officer O'Neill attempted to handcuff him, and the two men fell backwards to the ground. Officer O'Neill landed with his back on the ground, and with Reaves' back on top of his chest. Id. Officer O'Neill then grabbed Reaves and rolled him over onto his stomach in order to subdue him. Id. at 55-56. Once on top of Reaves, Officer O'Neill put his knee on Reaves' back and proceeded to handcuff him. Id. at 72. Officer O'Neill then placed Reaves under arrest and took him in his patrol car to the City of Columbia Detention Center. Id. at 56. Reaves suffered a broken kneecap as a result of the incident. Id. at 83. However, at no point, neither during the drive to the Detention Center nor afterward, did Reaves mention to Officer O'Neill that his knee was injured or painful. Id. at 76, 78-79. Reaves suffered no cuts or bruises from being wrestled to the ground. Id. at 74.
 
 II.
 
 6
 Reaves brought this suit under 42 U.S.C. Sec. 1983, alleging that Officer O'Neill had violated his constitutional rights in stopping him and patting him down, in using excessive force to arrest him, and in showing deliberate indifference to his medical needs. Reaves later added a state law claim for false arrest. We agree with Officer O'Neill that he was entitled to qualified immunity on all of these claims.[4]
 
 
 7
 In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Following Harlow, this circuit has stated that summary judgment should be entered for defendant officials on qualified immunity grounds "unless there is a genuine issue as to whether the defendant in fact committed a violation of clearly established law." Turner v. Dammon, 848 F.2d 440, 444 (4th Cir.1988).
 
 
 8
 Applying these standards, we believe that the district court erred in denying Officer O'Neill qualified immunity on Reaves' claims. First, there is no genuine issue as to whether Officer O'Neill's initial stop-and-frisk could be characterized as a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. The Supreme Court has held that police officers may conduct a brief stop for investigative purposes whenever they have a reasonable suspicion grounded in specific and articulable facts that the person stopped has been involved in a crime. United States v. Hensley, 469 U.S. 221, 229 (1985). Contrary to Reaves' contentions, Officer O'Neill did not stop him merely because he was a black male; indeed, Officer O'Neill told Reaves' companion, Mitchell, who was also black but whose age Reaves estimated at twenty-five, J.A. at 65, to go on his way. Rather, Reaves was stopped because Officer O'Neill reasonably thought him old enough to be the still-at-large shooting suspect, and because he was the first person he saw in the immediate vicinity of the crime, which had occurred just one hour before, who fit the father's description.
 
 
 9
 Officer O'Neill's weapons pat-down similarly did not violate clearly established law. In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a reasonable search for weapons during an investigatory stop is allowed where the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Id. at 27. In this case, the suspect in question, whose rough description matched Reaves, was wanted for a shooting; Reaves' address was very close to the suspect's; and Reaves' own deposition confirms that Officer O'Neill thought that Reaves had given the suspect's address as his own. Officer O'Neill therefore was justified in believing that Reaves might have been armed and dangerous.
 
 
 10
 As for the excessive force claim, we also conclude that there is no genuine issue as to whether Officer O'Neill's actions violated clearly established law. An officer's right to make an arrest or investigatory stop carries with it the right to use a reasonable degree of physical force. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). Officer O'Neill was confronted with a possibly armed shooting suspect dropping his hands to his side, despite having been ordered to keep them on the patrol car. In such circumstances, Officer O'Neill's legitimate safety concerns justified using what was an objectively reasonable amount of force to handcuff Reaves for Officer O'Neill's own self-protection. Reaves also admits that when the two of them fell to the ground, Officer O'Neill was underneath him. Therefore, it was Officer O'Neill who hit the ground first; for Officer O'Neill simply to have rolled Reaves onto his stomach in order to handcuff him, which action evidently caused Reaves' sole injury, was fully legitimate under existing law.[5]
 
 
 11
 The order of the district court, denying summary judgment for Officer O'Neill on qualified immunity grounds, is therefore vacated. We remand this case to the district court with instructions that summary judgment be entered for Officer O'Neill on all of Reaves' claims.
 
 
 12
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Although an interlocutory order, the denial of a motion for summary judgment based on a claim of qualified immunity is an appealable "final decision" under 28 U.S.C. Sec. 1291. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)
 
 
 [2]
 According to Reaves' complaint, he is forty-three years old. Id. at 19
 
 
 [3]
 Reaves did not precisely deny this point; his complaint, moreover, notes that he is a paranoid schizophrenic. Id. at 19
 
 
 [4]
 Reaves also sued the City of Columbia, Richland County, and several local officials. These parties, most of whom were dismissed by the district court, are not before this court on appeal
 
 
 [5]
 Reaves's claim of deliberate indifference to his medical needs must also be dismissed because he never communicated any pain or injury to Officer O'Neill. We also believe that there is no genuine issue as to the legality of Reaves' arrest for resisting arrest and disorderly conduct, of which charges he was later convicted in a South Carolina court. Hence, summary judgment should have been awarded on this claim as well