**Eddie MCCALL, Plaintiff,**

v.

**Lieutenant Dwight WILLIAMS, Sheriff Jack McCrea, and Williamsburg County Sheriff's Department, Defendants.**

No. Civ.A. 2:97–1798–18.

United States District Court,
D. South Carolina,
Charleston Division.

May 19, 1999.

William Joseph Barr, Kingstree, SC, for plaintiff.

Robert Thomas King, Florence, SC, for defendant.

## ORDER

NORTON, District Judge.

This action is before the court on Defendants' Motion to Dismiss and Motion for Summary Judgment.

### I. FACTUAL BACKGROUND

Because this action is before the court on Defendants' Motion for Summary Judgment, the facts are stated in the light most favorable to Plaintiff.

On June 16, 1994, while traveling in a vehicle with a female passenger, Plaintiff was stopped by Lieutenant Dwight Williams, and deputies Randy Grayson and Dennis Parrot. The law enforcement officers instructed Plaintiff to get out of the car. They searched the vehicle with Plaintiff's consent. After the search, one of the officers told Plaintiff that he was free to go. Plaintiff and his passenger left in the vehicle. The passenger then told Plaintiff that she believed that the officers had wanted her to stay. Plaintiff turned his vehicle around and returned to where the officers were still standing. Deputy Parrot pointed his gun at Plaintiff and demanded that he get out of the car. Lieutenant Williams then placed handcuffs on Plaintiff. On at least three occasions, Plaintiff told the officers to take off the handcuffs because they were too tight. He kept on begging them to take the handcuffs off because his wrists were hurting. The handcuffs were on his wrists for fifteen to twenty minutes while the officers questioned the female passenger. The officers then instructed him that he was free to go.

Plaintiff went to the hospital the same day, but he received no medical treatment. Two weeks later, still suffering pain in his wrists, he went to the hospital again. He was later treated by Dr. R. Joseph Healy. Nine months after the incident, Dr. Healy opined that Plaintiff had "10% impairment of his RUE as a result" of the handcuffs being too tight.

On June 13, 1997. Plaintiff filed this action.

### II. LAW/ANALYSIS

### A. Summary Judgment Standard

This court must grant a motion for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). If the moving party carries its burden of showing that there is an absence of evidence to support a claim, then the non-moving party must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *See Celotex Corp.,* 477 U.S. at 324–25, 106 S.Ct. 2548. An issue of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. *See id.* When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 438 (4th Cir.1998).

### B. State Law Claims for Assault and Battery Against Lieutenant Williams

Plaintiff has alleged pendent state law claims for assault and battery against Lieutenant Dwight Williams in his official and individual capacities. Plain-

tiff's claims fail as a matter of law. First, because a deputy sheriff is considered an arm of the State, Plaintiff's suit against Lieutenant Williams in his official capacity as a deputy sheriff is the same as a suit against the State. *See Cromer v. Brown,* 88 F.3d 1315, 1332 (4th Cir.1996); *Carroll v. Greenville County Sheriff's Dep't,* 871 F.Supp. 844, 846 (D.S.C.1994). As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court, unless the State expressly waived this immunity. *See* U.S. Const. XI; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This court may find a waiver of Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (*quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). The South Carolina Tort Claims Act (SCTCA); which is the exclusive remedy for any tort committed by a government employee [1] acting within the scope of his official duties,[2] waived immunity in state court for certain tort claims against the state. *See* S.C.Code Ann. § 15–78–40 (Supp.1997). However, the Act expressly reserved the state's Eleventh Amendment immunity in federal court. *See* S.C.Code Ann. § 15–78–20(e) (Supp.1997) ("Nothing in this chapter is [to be] construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States. . . ."). The Eleventh

Amendment thus bars Plaintiff's pendent state law claims for assault and battery against Lieutenant Williams in his official capacity as a deputy sheriff. *See Huang v. Board of Governors,* 902 F.2d 1134, 1138 (4th Cir.1990).

■ Second, Plaintiff's claims against Lieutenant Williams in his individual capacity for assault and battery also fail as a matter of law. The SCTCA does not grant an employee "immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–70(b) (Supp.1997); *see also* S.C.Code Ann. § 15–78–60(17) (Supp.1997). Thus, a government employee can be personally liable for intentional torts such as assault and battery. *See Roberts v. City of Forest Acres,* 902 F.Supp. 662, 671 (D.S.C.1995) (finding that the governmental entity is not liable under the SCTCA, and the employee is personally liable, when the employee's conduct falls within the exceptions listed in section 15–78–70(b)); *Moore v. Berkeley County Sch. Dist.,* 326 S.C. 584, 486 S.E.2d 9, 11 & n. 3 (1997) (noting that the SCTCA plaintiff did not contest a grant of summary judgment in favor of the state on his assault and battery claims when the intentional torts were committed by the government employee). As a result, the three-year statute of limitations for SCTCA suits initiated after the filing of a verified claim [3] is in applicable to Plaintiff's state-law tort claims against Lieutenant Williams in his individual capacity.[4] Instead, the two-year statute of limitations for assault and bat-

---

1. "Employee" is defined by the South Carolina Tort Claims Act as "any officer. employee, or agent of the State or its political subdivisions, including elected or appointed officials, [and] law enforcement officers." S.C.Code Ann. § 15–78–30(c) (Supp.1997).

2. *See* S.C.Code Ann. § (15–78–70(a) (Supp. 1997).

3. *See* S.C.Code Ann. §§ 15–78–80(a), 15–78–100(a) (Supp.1997).

4. Because this aspect of Plaintiff's claims relates to Lieutenant Williams in his *individual* capacity, the three-year statute of limitations for suits against a sheriff for acts committed in his *official* capacity is also inapplicable to this case. *See* S.C.Code Ann. § 15–3–540(1) (1976).

tery applies. *See* S.C.Code Ann. § 15–3–550(1) (Supp.1997). Plaintiff's cause of action arose on June 16, 1994, the date Plaintiff claims Lieutenant Williams placed handcuffs too tightly on his wrists. Because Plaintiff did not file this action until June 13, 1997, more than two years after the date of the incident, Plaintiff's state law claims against Lieutenant Williams in his individual capacity are time barred.[5]

## C. 42 U.S.C. § 1983 Claim Against Lieutenant Williams

■ Plaintiff's § 1983 claim against Lieutenant Williams fails as a matter of law. First, the Eleventh Amendment bars any § 1983 damages claim in federal court against Lieutenant Williams in his official capacity as a deputy sheriff. *See* U.S. Const. XI; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Cromer v. Brown,* 88 F.3d 1315, 1332 (4th Cir.1996); *Carroll v. Greenville County Sheriff's Dep't,* 871 F.Supp. 844, 846 (D.S.C.1994); *Gulledge v. Smart,* 691 F.Supp. 947, 955 & n. 7 (D.S.C.1988).

■ Second, Lieutenant Williams is entitled to qualified immunity for the § 1983 claim[6] against him in his individual capacity. Government officials are qualifiedly immune from civil damages suits so long as their " 'conduct does not violate clearly established rights of which [a] reasonable person would have known.' "

" *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Ruling on Lieutenant Williams's defense of qualified immunity requires (1) identifying the right allegedly violated; (2) determining whether the right was clearly established at the time of the alleged violation; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that clearly established right. *See Gould v. Davis,* 165 F.3d 265, 269–73 (4th Cir.1998); *Vathekan v. Prince George's County,* 154 F.3d 173, 179–80 (4th Cir.1998).

The court is aware that a significant number of Fourth Circuit decisions have analyzed the qualified immunity defense to excessive force claims differently. *See, e.g., Rowland v. Perry,* 41 F.3d 167, 172–74 (4th Cir.1994). In *Rowland,* the court noted that qualified immunity "shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights." *Id.* at 172. Recognizing that the "reasonableness" inquiry was "an objective one," the *Rowland* court noted that it gauged "objective reasonableness" by examining the "actions at issue and measur[ing] them against what a reasonable police officer would do under the circumstances." *Id.* Significantly, the *Rowland* court cited *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d

---

**5.** The court notes that even if the three-year statute of limitations were to apply, the state law claims would still be time barred. Plaintiff filed this action in federal court less than three years from the date of the incident. The Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3. However, when a state law claim is in federal court because of diversity of citizenship or pursuant to supplemental jurisdiction, state law on the commencement of actions applies. *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 751, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Wolfberg v. Greenwood Dev. Corp.,* 868 F.Supp. 132, 133–35 (D.S.C.1994); *Appletree Square 1 Ltd. Partnership v. W.R. Grace & Co.,* 815 F.Supp. 1266, 1271–72 & n. 9 (D.Minn.

1993). Under state law, a suit is not commenced, and thus the statute of limitations is not tolled, until the summons and complaint is filed and served on the defendant. S.C.R.Civ.P. 3. Because Defendants in this case were not served until August 6, 1997, Plaintiff's state law claims would not be timely even if the three-year statute of limitations period applied.

**6.** At the motions hearing on March 11, 1999, the court granted Plaintiff's Motion to Amend his Complaint. The Amended Complaint substituted the "negligence" language of the § 1983 claim with "excessive force" language.

443 (1989), for the latter proposition. Although *Graham* was the fountainhead-case for Fourth Amendment excessive force claims, it did not involve the defense of qualified immunity. Instead, the Supreme Court specifically noted that it expressed no view on the proper application of qualified immunity in excessive force cases. *See Graham*, 490 U.S. at 399 n. 12, 109 S.Ct. 1865. In the years between the *Graham* decision and the *Rowland* decision, the Fourth Circuit had decided that defendants could assert the qualified immunity defense in excessive force claims. *See Slattery v. Rizzo*, 939 F.2d 213, 215 (4th Cir.1991) ("There is no principled reason not to allow a defense of qualified immunity in an excessive use of force claim, when it is allowed in other actions alleging violations of the fourth amendment."). In performing its qualified immunity analysis, the *Slattery* court disagreed with the plaintiff that the "primary question in determining the issue of qualified immunity, is whether [the defendant] in the eyes of a reasonable policeman acted reasonably in shooting [the plaintiff.]" *Id.* at 216. The court noted that the plaintiff's formulation "reaches the merits of the case." *Id.* In contrast, "qualified immunity affords government officials greater protection than a simple defense on the merits." *Id.* Nevertheless, without reference to this language from Slattery and citing only cases that did not involve qualified immunity,[7] the *Rowland* court held that "[t]he immunity test and the test on the merits [in an excessive force case] both rely on an objective appraisal of the reasonableness of the force employed. The inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Rowland*, 41 F.3d at 173. The court then went on to consider the objective reasonableness of the force "with an eye toward the proportionality of the force in light of all the circumstances." *Id.*

Since *Rowland*, the Fourth Circuit has often analyzed subsequent qualified immunity defenses to excessive force claims according to the "objective reasonableness" of the officer's actions, sometimes considering the same "reasonableness" factors[8] the United States Supreme Court used in *Graham* when the Court recognized an excessive force claim under the Fourth Amendment. *See Pittman v. Nelms*, 87 F.3d 116, 119–20 (4th Cir.1996) (without citing *Rowland*); *see also Carver v. Bulloch*, 168 F.3d 481, 1999 WL 11278, at *12 (4th Cir.1999) (unpublished opinion): *Nadelin v. Martin*, 166 F.3d 333, 1998 WL 802021, at *3–4 (4th Cir.1998) (unpublished opinion); *Reed v. Cheney*, 133 F.3d 916, 1998 WL 25032, at * 1–2 (4th Cir.1998) (unpublished opinion); *Reaves v. O'Neill*, 23 F.3d 402, 1994 WL 168426, at *3 (4th Cir.1994) (unpublished opinion).

In another case, the Fourth Circuit addressed the defendants' claims of qualified immunity separately when one claim related to a Fourth Amendment excessive force claim. and the other related to a Fourth Amendment warrantless arrest claim. *See McCarn v. Beach*, 91 F.3d 131, 1996 WL 393168, at *3–4 (4th Cir.1996) (unpublished opinion). In the excessive force context, the *McCarn* court cited *Rowland* and ignored the three-prong qualified immunity analysis by analyzing the objective reasonableness of the officer's actions, guided by the Graham reasonableness factors. *See id.* After granting qualified immunity on the excessive force claim, the court addressed the other claim by engaging in the

---

**7.** See *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

**8.** These factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

"traditional" three-pronged qualified immunity analysis. *See id.*

Despite the case law favoring an analysis of the objective reasonableness of the officer's actions when qualified immunity is asserted in the context of an excessive force claim, this court will analyze Lieutenant Williams's qualified immunity defense according to the traditional three-pronged analysis. The court will do so because of two recent published decisions from the Fourth Circuit, one of which sheds light on the applicability of the standard three-pronged analysis in excessive force cases, and the other clarifies the appropriate methodology to be used in the qualified immunity analysis. *See Gould v. Davis.* 165 F.3d 265, 269–73 (4th Cir.1998) (clarifies qualified immunity methodology); *Vathekan v. Prince George's County,* 154 F.3d 173, 179–80 (4th Cir.1998) (applying three-pronged test in excessive force cases).

First, in *Vathekan,* the Fourth Circuit addressed the issue of whether a police officer was entitled to qualified immunity when the plaintiff was attacked by a police dog that she claimed was deployed in an objectively unreasonable manner. *See Vathekan,* 154 F.3d at 177. The court of appeals analyzed this issue within the framework of the traditional three-pronged test for qualified immunity. *See id.* at 179–80. The court framed the right in a fact-specific manner, noting that the plaintiff's claim was "based on her Fourth Amendment right to be free from excessive force in the course of a Fourth Amendment seizure brought about by a police dog that was deployed without verbal warning." *Id.* at 179. After framing the right in such a manner, the court considered whether that specific right was clearly established on the date of the incident. *See id.* Inexplicably, and in the middle of this three-pronged analysis, the court quoted the objective reasonableness language of *Rowland.* *See id.* at 179. Without applying that language to the facts of the case by determining whether

the officer's actions were objectively reasonable under the circumstances, the court instead returned to the issue of whether the specific right had been clearly established on the date of the incident. *See id.* The court considered an earlier Fourth Circuit decision involving the deployment of a police dog. *See Kopf v. Wing,* 942 F.2d 265, 268 (4th Cir.1991) (reversing a grant of summary judgment for the officers because a reasonable jury could find that the degree of force used, deploying a dog without a verbal warning, was not objectively reasonable). In *Vathekan,* the Fourth Circuit characterized its earlier decision in *Kopf* as holding that "the improper deployment of a police dog that mauls the target constitutes excessive force." *See Vathekan,* 154 F.3d at 179. Because this decision was available at the time the officer deployed the dog in *Vathekan,* the Fourth Circuit concluded that "it was clearly established [at the time of the incident] that failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment." *Vathekan,* 154 F.3d at 179. The court could not, however, "apply[ ] the clearly established law to determine whether [the police officer was] entitled to qualified immunity" because a genuine issue of material fact existed as to whether the officer had given a verbal warning before releasing the dog. *See id.* at 180. Had no warning been given. the officer's actions would have been objectively unreasonable. *See id.* Nevertheless, *Vathekan* makes clear that the framework of analysis in excessive force cases is the same three-pronged qualified immunity test as other § 1983 cases involving qualified immunity.

Second, the Fourth Circuit has recently clarified the analysis that a court must perform within the familiar three-prong framework in qualified immunity cases. *See Gould v. Davis,* 165 F.3d 265, 269–73 (4th Cir.1998). According to *Gould,* courts and parties have misconstrued the third prong of the three-part qualified immunity

test. *See id.* at 273. In the final prong, a court "must determine whether a reasonable person in the officer's position would have known that his actions violated the right alleged by the plaintiff." *Id.* at 272. The court found that the parties erred by arguing about "whether the officers acted 'reasonably' in the sense in which that term is used in tort law." *Id.* at 273. Instead, the *Gould* court explained that the concept of objective reasonableness in the context of qualified immunity meant simply that the inquiry was objective, rather than subjective. *See id.* The court of appeals indicated that the confusion was "understandable" because the parties in *Gould* and some courts "define the right alleged by a § 1983 plaintiff at a very general level under the second prong and consider the factual circumstances under the third prong." *Id.* Once the right is defined broadly, "the second prong of the qualified immunity analysis becomes a pro forma recitation of a general constitutional right, and the real 'work' (that is, the consideration of the specific facts of the case) is done under the third prong." *Gould,* 165 F.3d at 273. Instead, the *Gould* court instructed that "the right in the second prong [should be] well-defined [in a] fact-specific manner [so that] the third prong will be quite easy to resolve, absent extraordinary circumstances." *Id.* The question in the final prong becomes "whether a reasonable person would have known about controlling law, once that law is deemed to have been clearly established under the second prong." *Id.* When the inquiry proceeds to the third prong, then, absent extraordinary circumstances that prove the officer neither knew nor should have known of the relevant legal standard, the qualified immunity defense should fail. *See id.* Under this conception of the third prong of the qualified immunity analysis, the objective reasonableness inquiry "is not a freestanding evaluation of the 'reasonableness' of an officer's actions." *Id.* Accordingly, the freestanding, objective reasonableness inquiry into the actions of the police officers, performed in such ex-

cessive force cases as *Rowland,* would seem to be repudiated.

Based on the analysis in *Vathekan* and *Gould,* this court will address the issue of qualified immunity within the framework of the traditional three-pronged inquiry, performing most of its "work" in the second prong. Under the first prong of the qualified immunity analysis, Plaintiff has identified the right he claims was violated as the right to be free from a law enforcement officer's use of excessive force. In 1989, the United States Supreme Court held that the Fourth Amendment protects suspects from "unreasonable seizures," which includes a law enforcement officer's use of excessive force to effect an arrest. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

 Under the second prong of the qualified immunity analysis, the right the official is said to have violated must be framed in particular, and not general, terms. Although the right to due process of law, for example, is quite clearly established, the qualified immunity analysis law is not "to be applied at this level of generality." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Instead, the right allegedly violated "must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Id.* at 640, 107 S.Ct. 3034. The Supreme Court specified that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Attempting to clarify the level of specificity required, the Fourth Circuit has noted that "the proper focus is ... upon the right ... at the level of its application to the specific conduct being challenged." *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992); *see also Gould v. Davis,* 165 F.3d 265, 269–70 (4th Cir.1998) ("The second prong of the qualified immunity analysis must take into account the specific facts and context of the alleged violation."); *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991) ("For the purpose

of determining whether a defendant is entitled to qualified immunity[,] the plaintiff's rights must be clearly established under the particular circumstances confronting the official at the time of the questioned action.") In other words, "a court must identify the right infringed at a high level of particularity." *Jean v. Collins*, 155 F.3d 701, 708 (4th Cir.1998).

The Fourth Circuit has recently framed specific rights allegedly violated at a very high degree of factual specificity. For example, in a recent excessive force case, the Fourth Circuit framed the plaintiff's right, which had to be clearly established at the time of the incident, as the "Fourth Amendment right to be free from excessive force in the course of a Fourth Amendment seizure brought about by a

police dog that was deployed without a verbal warning." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir.1998).[9] This court must follow the Fourth Circuit's lead and frame the right in this case at the appropriate level of factual specificity.[10] Instead of simply the right to be free from the use of excessive force, the right may be defined as a person's Fourth Amendment right to be free from the use of excessive force by law enforcement officers *in tightly handcuffing a suspect* to effect an arrest or during an investigatory stop.[11]

■ Even though the right is so specifically framed, this does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."

---

9. The Fourth Circuit has similarly framed the rights at issue in cases that did not involve claims of excessive force. In *Wilson v. Layne*, 141 F.3d 111 (4th Cir.1998) (en banc), the plaintiffs claimed that their Fourth Amendment rights were violated when police officers decided to permit the press to accompany them into plaintiffs' house to execute a warrant for their arrest. In analyzing defendants' qualified immunity claims, the Fourth Circuit articulated the right that had to be clearly established as follows:

> The constitutional right that the [plaintiffs] claim the officers violated, *defined at the appropriate level of specificity*, is their Fourth Amendment right to avoid unreasonable searches or seizures resulting from the officers' decision to permit members of the media who were not authorized to execute the warrant to enter into a private residence, without the homeowners' consent, to observe and photograph the execution of an arrest warrant.

*Id.* at 115 (emphasis added); *see also Gould v. Davis*, 165 F.3d 265, 270 (4th Cir.1998) (defining the right at its appropriate level of specificity, the court framed the issue as "whether it was clearly established law [at the time of the incident] that the Fourth Amendment required officers to knock and announce their presence, and wait a reasonable period of time, prior to entering a dwelling").

10. The Fourth Circuit has noted that "[i]f the right is not defined at an appropriately particularized level, [then] an alleged violation of the law that was existing at the time of the challenged conduct necessarily would be an

alleged violation of clearly established law, and the reasonableness of the defendant's conduct would be irrelevant." *DiMeglio v. Haines*, 45 F.3d 790, 804 (4th Cir.1995).

11. The court notes that if the inquiry was not so specifically framed, then such diverse official actions as shooting a fleeing suspect and applying handcuffs too tightly would be covered under the same "clearly established" right to be free from excessive force in effecting an arrest. Such a rule would offend the purpose of qualified immunity and provide officers with insufficient notice that their actions in particular situations were in violation of the suspect's constitutional rights. *See Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) ("The purpose of [the qualified immunity] doctrine is to ensure that police officers and other government actors have notice of the extent of constitutional restrictions on their behavior. Thus, qualified immunity prevents officials from being blindsided by liability derived from newly invented rights or new, unforeseen applications of pre-existing rights."). In this respect, the court must disregard two unpublished decisions of the Fourth Circuit that have broadly defined the right as the right to be free from the use of excessive force. *See Edmundson v. Keesler*, 103 F.3d 117, 1996 WL 683888, at *3 (4th Cir.1996) (unpublished opinion); *Haddaway v. Ellerbusch*, 996 F.2d 1211, 1993 WL 238997, at *2 (4th Cir.1993) (unpublished opinion) ("The right to be free from the use by police of excessive force is—and was at the time of the shooting in this case—clearly established in the law.").

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995) ("[T]here need not be a prior case directly on all fours with the facts presented to the official."); *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir.1992) ("The fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes."). Instead, the official will lose the protection of qualified immunity if, in light of pre-existing law, the unlawfulness of the official's conduct was apparent. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also Vathekan v. Prince George's County,* 154 F.3d 173, 179 (4th Cir.1998) (noting that the unlawfulness of the conduct must be "manifest" under existing authority). Consequently, rights that are "clearly established" include the rights that are already "specifically adjudicated," and those rights "manifestly included within more general applications of the core constitutional principle invoked." *Pritch-*

*ett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992).

 Based on a reading of Fourth Circuit case law,[12] this court must determine whether the right to be free from the use of excessive force by law enforcement officers in tightly handcuffing a suspect was clearly established at the time of the incident, so that it was manifest to Lieutenant Williams that the degree of force he used was, under the circumstances, objectively unreasonable and in violation of the Fourth Amendment.[13] This court could not find, nor did the parties cite, any mandatory precedent clearly establishing that, at the time of the incident, it was "objectively unreasonable" for Lieutenant Williams to tightly handcuff Plaintiff during an investigatory stop. The court has also not found any mandatory precedent clearly establishing a broader right in which this specific right would be "manifestly included," so that Lieutenant Williams would have been on notice on June 16, 1994, that he was violating Plaintiff's constitutional right to be free from the use of excessive force by handcuffing his hands together too tightly.[14] This

**12.** The court notes that unlike police officers who are not liable for bad guesses in gray areas, this court is accountable when it makes such guesses.

**13.** The court expresses some concern that the analysis in *Vathekan* and *Gould* may lead to the retardation of excessive force jurisprudence. The court notes that the *Kopf* case, upon which the *Vathekan* court relied for its clearly established law, did not involve an assertion of the qualified immunity defense. Instead, the court of appeals in *Kopf* simply analyzed whether the force was objectively reasonable as a matter of law for summary judgment purposes. *See Kopf,* 942 F.2d at 267–69. As a result, the case could form the basis of clearly established law. If the *Kopf* case had actually involved the issue of qualified immunity, then, under the *Vathekan* analysis, that court would also have had to trawl the waters of Supreme Court and Fourth Circuit jurisprudence in search of a case that made it manifest under then-existing authority that the degree of force used was objectively unreasonable. Because excessive force cases usually involve a qualified immunity defense, the jurisprudence may only evolve to the extent that courts are willing to allow

some play in the joints of how manifest the unlawfulness of the conduct must be under existing authority before police officers lose their qualified immunity. Section 1983 Fourth Amendment excessive force cases should be distinguished in this respect from § 1983 Fourth Amendment search and seizure cases because the search and seizure jurisprudence will evolve through motions to suppress filed in criminal cases.

**14.** At least two Fourth Circuit cases have dealt with claims of excessive force in the context of officers applying handcuffs too tightly to suspects' wrists. *See Carter v. Morris,* 164 F.3d 215, 219 n. 3 (4th Cir.1999); *Ritchie v. Jackson,* 98 F.3d 1335, 1996 WL 585152, at *1–2 (4th Cir.1996) (unpublished opinion). These cases are irrelevant to the court's analysis because they were both decided after the incident in this case. Moreover, neither case clearly establishes the law of excessive force in this context. In both cases, the plaintiffs alleged only a de minimis injury so that the claim could not be maintained under the Fourth Amendment.

court has been instructed by the Fourth Circuit not to look beyond the decisions of the United States Supreme Court, the Fourth Circuit, and the South Carolina Supreme Court to determine whether this specific right was clearly established at the time this incident occurred in June 1994. *See Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998). Thus, Plaintiff's citation to Ninth Circuit case law is to no avail.[15] *Id.* ("[I]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense."). Without any mandatory precedent clearly establishing the specific right as of June 1994, Lieutenant Williams is entitled to qualified immunity, so that summary judgment is appropriate for this claim.

### D. 42 U.S.C. § 1983 Claim Against Sheriff Jack McCrea

 Plaintiff's Complaint may be construed to allege a claim against Sheriff McCrea in his individual capacity[16] for supervisory liability[17] under § 1983. Three elements are necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervi-

sor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). Plaintiff cannot satisfy his burden of establishing supervisor liability through deliberate indifference by "pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984). Even though this case has been pending for almost two years, Plaintiff has not produced a single piece of evidence that Sheriff McCrea failed to properly train or supervise his deputies.[18] To the contrary, the only evidence in the record suggests that Sheriff McCrea properly supervised his deputies and was not deliberately indifferent to their actions. For example, Sheriff McCrea explained that when he received complaints, he would "discuss the claims with the involved officers[, review] any and all documentation regarding the underlying incident, [and] make a determination as to whether internal disciplinary

---

**15.** Plaintiff cited to a case from the Ninth Circuit which held that "no reasonable officer could believe that the abusive application of handcuffs was constitutional." *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993).

In response to interrogatories propounded by this court, Plaintiff also cited a recent South Carolina Supreme Court case that approved of the Ninth Circuit's analysis on handcuffs in excessive force cases. *See Quesinberry v. Rouppasong*, 331 S.C. 589, 503 S.E.2d 717, 721–22 (1998). This citation is also to no avail because the case was decided after the incident involved in this case, and so the law could not have been "clearly established" at the time Lieutenant Williams allegedly used excessive force in applying the handcuffs.

**16.** Any § 1983 claim for damages in federal court against Sheriff McCrea in his official

capacity would be barred by the Eleventh Amendment. *See* U.S. Const. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996); *Carroll v. Greenville County Sheriff's Dep't*, 871 F.Supp. 844, 846 (D.S.C.1994); *Gulledge v. Smart*, 691 F.Supp. 947, 955 & n. 7 (D.S.C.1988).

**17.** Contrary to Plaintiff's contention, there is no respondeat superior liability under § 1983. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Zepp v. Rehrmann*, 79 F.3d 381, 385 (4th Cir.1996).

**18.** The court declines Plaintiff's request for yet more time to investigate this claim.

measures were warranted." (Sheriff McCrea's Answer to Plaintiff's Interrog. No. 9) Consequently, summary judgment is appropriate for this claim.[19]

### E. 42 U.S.C. § 1983 Claim Against the Williamsburg County, Sheriff's Department

■ To the extent that Plaintiff alleged a separate cause of action against the Williamsburg County Sheriff's Department,[20] this claim fails as a matter of law because the Sheriff's Department, like the sheriff, is an arm of the state and entitled to Eleventh Amendment immunity. *See Blankenship v. Warren County*, 931 F.Supp. 447, 449 (W.D.Va.1996) ("[T]he Sheriff and the Sheriff's Department are arms of the state."). Consequently, summary judgment is appropriate for this claim.

It is therefore,

**ORDERED,** that Defendants' Motion for Summary Judgment on all of Plaintiff's claims be **GRANTED.**

**AND IT IS SO ORDERED.**

---

**19.** Defendants argue that because Plaintiff suffered no constitutional injury, there can be no supervisory liability as a matter of law. *See Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir.1991). Although this is a correct statement of the law, a finding of qualified immunity is not the same as a finding that no constitutional injury occurred. Instead, this court found that even if a constitutional injury occurred, Lieutenant Williams was entitled to qualified immunity. As a result, Plaintiff's claim against the sheriff in his individual capacity for supervisory liability would survive summary judgment if Plaintiff had produced any evidence to support the claim. He did not.

**20.** Plaintiff did not sue Williamsburg County under *Monell* and its progeny.