**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLARENCE GOULD, SR., individually
and as husband; LENA GOULD, as
wife,
Plaintiffs-Appellees,

v.

ANDREW S. DAVIS; LEE RUSSO,
Corporal; PHILIP CRUMBACHER, Police
Officer,
Defendants-Appellants,

No. 97-1777

and

BALTIMORE COUNTY; JOHN DOE, I;
JOHN DOE, II; JOHN DOE, III; JOHN
DOE, IV; JOHN DOE, V; LISA
ALLEWALT-HANNON, Police Sergeant;
MARTIN LIPPY, Police Officer;
MICHAEL PRENDERGAST, Police
Officer,
Defendants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-95-3116-H)

Argued: January 26, 1998

Decided: December 31, 1998

Before ERVIN and WILLIAMS, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the majority opinion, in which Judge Goodwin joined. Judge Williams wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** John Edward Beverungen, Assistant County Attorney, Towson, Maryland, for Appellants. Lauren Ruth Calia, ISRAELSON, SALSBURY, CLEMENTS & BEKMAN, L.L.C., Baltimore, Maryland, for Appellees. **ON BRIEF:** Virginia W. Barnhart, County Attorney, Jeffrey Grant Cook, Assistant County Attorney, Towson, Maryland, for Appellants. Paul D. Bekman, ISRAELSON, SALSBURY, CLEMENTS & BEKMAN, L.L.C., Baltimore, Maryland, for Appellees.

_____

**OPINION**

ERVIN, Circuit Judge:

Andrew Davis, Lee Russo, and Philip Crumbacher ("the officers") are police officers in Baltimore County, Maryland who appeal the district court's denial of their motion for summary judgment based on qualified immunity. In this § 1983 action, the officers are accused of violating Clarence Gould's Fourth Amendment right to be free from unreasonable searches when they sought and executed a "no-knock" search warrant. We agree with the district court that the officers are not entitled to qualified immunity because the constitutional right at issue was clearly established at the time of the events in question and was a right of which a reasonable officer would have known. For the reasons below, we affirm the district court's denial of summary judgment.

I.

Clarence Gould, Sr. ("Gould" or "Gould, Sr."), his wife, Lena, and their granddaughter, Brittany, reside in Baltimore County at 3806 Milford Mill Road. On October 16, 1992, Clarence Gould, Jr.

2

("Gould, Jr."), the Goulds' son, was arrested and detained as a suspect in a series of robberies that had occurred in the area of Liberty Road in Baltimore County. Gould, Jr. was apprehended after robbing at gunpoint the Pizza Hut on Liberty Road. The following day, police brought Daniel McCoy into custody and interviewed him in connection with the robbery of the Pizza Hut. McCoy informed police that he was the driver of Gould, Jr.'s getaway car in the Pizza Hut robbery as well as in several other robberies in the Liberty Road area. McCoy also stated that after some of the robberies he drove Gould, Jr. to his father's house on Milford Mill Road, and that Gould, Jr. frequently stayed at his parents' home. At the time that police were interviewing McCoy, Gould, Jr. was also in police custody, and police had already obtained a warrant and conducted a search of Gould, Jr.'s home.

Based on this information, the officers applied for a search warrant to search Gould, Sr.'s home. In their application for a warrant, the officers averred that they had probable cause to believe that evidence of the Liberty Road robberies could be found at Gould, Sr.'s home: baseball caps, several shirts, a jacket, sunglasses, two handguns, a pair of jeans, and United States currency.

Most importantly for purposes of this appeal, the officers requested that the warrant be issued as a "no-knock" warrant. This would allow the officers to forcibly enter the home without announcing their presence and waiting a reasonable time for the Goulds to answer the door. The officers believed that the seriousness of the crime of which Gould, Jr. was accused, and the fact that the officers sought to recover two handguns, justified a departure from the "knock and announce" requirement in executing a warrant at Gould, Sr.'s home.

A Baltimore County Circuit Court judge issued the search warrant for Gould, Sr.'s home very early in the morning on October 18, 1992. Later that morning, between 5:00 and 6:00 a.m., the officers smashed the front door of Gould's home by means of a battering ram and forcibly entered with their weapons drawn without first knocking or otherwise announcing their presence. Gould was asleep at the time and did not hear the police as they entered the home, nor did he hear the officers yelling, "Police, everybody get down," while they ran upstairs toward his bedroom. Gould's first recollections were the sound of footsteps running up the stairs and a loud noise when the banister

3

gave way. Gould feared that intruders had broken into his home and he made his way to the bedroom closet where he kept a handgun. Officer Davis was the first to arrive in the bedroom. When he saw Gould with a weapon in his hand, he fired his weapon, missing Gould but hitting the wall beside him. Fragments from the bullet struck Gould in the arm, chest, and abdomen. Gould was hospitalized and treated for his wounds.

Gould filed an action in federal district court against the police officers and Baltimore County alleging that the defendants violated various federal and state laws in their request for and execution of the search warrant. Lena Gould joined her husband's action seeking damages for loss of consortium. The district court bifurcated the proceedings so that the claim against Baltimore County is no longer part of this action and therefore not before us. The district court also granted the officers' motion for summary judgment on several federal law counts, as well as on the state law causes of action, and that decision is also not before us. The district court, however, denied the officers' motion for summary judgment based on qualified immunity on one claim -- Gould's § 1983 claim that the officers violated his constitutional right to be free from unreasonable searches in the application for and execution of the no-knock warrant. On appeal, the officers argue that the district court erred in denying their claim of qualified immunity from liability.

II.

The district court's denial of a claim of qualified immunity, to the extent it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). However, we lack jurisdiction to review the district court's order "insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Johnson v. Jones , 515 U.S. 304, 320 (1995).

Gould argues that there are disputed questions of material fact that deprive this court of jurisdiction to hear this interlocutory appeal. Indeed, the district court's order denied summary judgment, in part, because it believed there are "disputed questions of fact" as to

4

whether reasonable officers would have believed they acted lawfully in securing and executing the no-knock warrant. J.A. at 303. The district court noted that the officers claimed that they "reasonably believed that the averments contained in their application and affidavit [for the warrant] constituted probable cause." J.A. at 303. The district court then pointed to "countervailing evidence which would support plaintiffs' contention that it was not reasonable for [the officers] to believe that probable cause existed for issuance of this `no knock' warrant." J.A. at 304.

While the district court is correct that different facts in evidence could be used to support different conclusions as to whether the officers deserve qualified immunity, this does not indicate a factual dispute, but rather, a question of law. The district court's order does not point to disputed questions of fact, but rather, disputed legal inferences that could be drawn from what is an undisputed factual record. For example, the conflict between the officers' assertion that they were reasonable in their belief that their actions were lawful and Gould's assertion that such a belief was unreasonable is not a factual conflict. The actual, subjective beliefs of the officers are irrelevant in resolving the immunity question. See Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] search to be lawful in light of clearly established law and the information the searching officers possessed. [The officer]'s subjective beliefs about the search are irrelevant."). For this reason, the "reasonableness" of the officers' decision in applying for and executing the warrant is a legal question that must be determined from the perspective of what a reasonable officer would have known about clearly established law, given the facts available to the officers at the time they acted. Here, there is no dispute about what information the officers had before them when they applied for and executed the no-knock warrant; the only question is whether the hypothetical "reasonable officer" would have known, given those undisputed facts, that his conduct was in violation of clearly established constitutional law. For this reason, we have jurisdiction to review the district court's order.

III.

Qualified immunity protects government officials from suits for civil damages arising out of the exercise of their discretionary func-

5

tions. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1981). This immunity is available when the conduct of a government employee "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id.</u> We have divided this standard into a three-part analysis. First, we must identify the right allegedly violated; second, we must decide whether the right was clearly established at the time of the alleged violation; and third, we must determine whether a reasonable person in the officer's position would have known that his or her actions violated that right. <u>Smith v. Reddy</u>, 101 F.3d 351, 355 (4th Cir. 1996).

A.

Under the first prong, Gould alleges that the officers violated his Fourth Amendment right to be free from unreasonable searches by the police. More specifically, Gould claims that the officers' decision to seek and execute a no-knock search warrant of his home violated his Fourth Amendment rights. The officers concede that this claim, if true, alleges a violation of a constitutional right.

B.

The second prong of the qualified immunity analysis inquires whether the right at issue was clearly established at the time the alleged violation took place. Under our court's precedent, the right must be defined with some specificity: "In determining whether the specific right allegedly violated was `clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." <u>Pritchett v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992). The second prong of the qualified immunity analysis must take into account the specific facts and context of the alleged violation. <u>See Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir. 1992) ("[T]he manner in which this right applies to the actions of the official must also be apparent."). In short, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." <u>Id.</u> (citations omitted). Defined at its appropriate level of specificity, then, Gould's claim is that the officers, given the circumstances of their investigation of Gould, Jr., exceeded their constitutional authority in seeking and executing a no-knock search warrant of Gould, Sr.'s home.

6

We must begin our analysis with a survey of the state of the law in the Fourth Circuit in October 1992 with regard to the "knock and announce" requirement under the Fourth Amendment. The first question is whether it was clearly established law in 1992 that the Fourth Amendment required officers to knock and announce their presence, and wait a reasonable period of time, prior to entering a dwelling. In their brief, the officers concede that the knock and announce requirement has been clearly established law in the Fourth Circuit since at least 1985. See Appellants' Br. at 14; Mensh v. Dyer, 956 F.2d 36, 40 (4th Cir. 1991); Simons v. Montgomery County Police Officers, 762 F.2d 30, 32 n.1 (4th Cir. 1985).

The officers also concede that it was clearly established law in October 1992 that police need not comply with the knock and announce requirement under certain "exigent circumstances." See Appellants' Br. at 14; Simons, 762 F.2d at 32-33 & n.2; United States v. Jackson, 585 F.2d 653, 662 (4th Cir. 1978). [1] Exigent circumstances can justify an entry without any knock and announcement "if there is a likelihood that the occupants will attempt to escape, resist or destroy evidence." Jackson, 585 F.2d at 662; see also Sabbath v. United States, 391 U.S. 585, 591 (1968) (exigent circumstances include danger to police officers); Katz v. United States , 389 U.S. 347, 355 n.16 (1967) ("[O]fficers need not announce their purpose before conducting an otherwise authorized search if such an announcement would provoke the escape of the suspect or the destruction of critical evidence."); Simons, 762 F.2d at 32 n.2 ("[The] likelihood of destruction

_____

[1] Under this circuit's precedent, the exact contours of the Fourth Amendment knock and announce requirement, and the exception to this requirement under exigent circumstances, are informed by reference to the federal knock and announce statute. See 18 U.S.C. § 3109 (1994) ("The officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after, notice of his authority and purpose, he is refused admittance . . . ."); Simons, 762 F.2d at 33 ("[T]he rule incorporated in § 3109 is merely expressive of the common law rule and thus is equally applicable in the state context."); see also United States v. Kennedy, 32 F.3d 876, 882 (4th Cir. 1994) ("Because this statute encompasses the constitutional requirements of the fourth amendment, it not only governs federal searches by federal agents, but also provides the proper framework for analyzing the execution of state search warrants." (quotation omitted)).

7

of evidence will constitute exigent circumstances . . . ."); <u>United States v. Couser</u>, 732 F.2d 1207, 1208 (4th Cir. 1984) (exigent circumstances include possible destruction of evidence).

The parties agree, then, that the following was clearly established law in October 1992: the officers were required by the Fourth Amendment to knock and announce their presence, and wait a reasonable time for a response, prior to entering Gould's home; and, this requirement could only be excused if exigent circumstances justified immediate entry. With this background in mind, we turn now to the officers' basic argument in this court -- that the exigent circumstances doctrine was not sufficiently defined in 1992 so that a reasonable officer would know he was violating clearly established law in seeking and executing a no-knock warrant under the circumstances of this case.

First, the officers argue that they are entitled to qualified immunity because the doctrine of exigent circumstances was not clearly established in 1992 and, indeed, remains unclear to this day. <u>Appellants' Br.</u> at 25. We disagree. As we discussed above, countless Supreme Court and Fourth Circuit cases prior to 1992 held that the doctrine of exigent circumstances basically encompasses officer safety and the destruction of easily-disposed evidence. <u>See</u>, <u>e.g.</u>, <u>Sabbath</u>, 391 U.S. at 591; <u>Katz</u>, 389 U.S. at 355 n.16; <u>Simons</u>, 762 F.2d at 32 n.2; <u>Jackson</u>, 585 F.2d at 662; <u>see also Bonner v. Anderson</u>, 81 F.3d 472, 477 (4th Cir. 1996) (Wilkinson, C.J., dissenting) (quoting <u>Jackson</u>, and finding that the exigent circumstances doctrine was "plainly indicated" by Fourth Circuit caselaw in September 1992). In order to find that the law in a given area is clearly established,"there need not be a prior case directly on all fours." <u>Pinder v. Johnson</u>, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc); <u>see DiMeglio v. Haines</u>, 45 F.3d 790, 804 (4th Cir. 1995) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ."). Instead,"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>see DiMeglio</u>, 45 F.3d at 804 ("[I]n the light of pre-existing law the unlawfulness must be apparent."). We believe it would have been "sufficiently clear" and "apparent" to a reasonable officer in October 1992 that failure to knock and

8

announce prior to entering Gould's home could only be justified by a fear for officer safety or a fear that the evidence sought in the warrant could be easily destroyed.

Second, and in the alternative, the officers argue that if the definition of exigent circumstances was clearly established in 1992, then a reasonable officer would have believed that the circumstances of this case justified dispensing with the knock and announce requirement in the search of Gould's home. On this point, the officers rely on the "officer safety" component of the exigent circumstances doctrine. The officers' brief presents the issue this way: In October 1992, clearly established law provided that "the Defendants' actions were justified if the exigencies and practicalities of the situation . . . served to increase the peril of the arresting officer." Appellants' Br. at 31 (quotation omitted).

The officers provide two reasons why they believed they would be in peril in a search of Gould's home: 1) the crime for which Gould, Jr. was being investigated was armed robbery and the search warrant listed two handguns among the items to be seized, and 2) the criminal history of Gould's children warranted an inference that Gould, Sr. might shoot the officers if they knocked and announced their presence before entering. The first of these justifications was put forward in the officers' affidavit used to secure the warrant, see J.A. at 88, and the second was propounded in the officers' brief on appeal, see Appellants' Br. at 37 n.9. We cannot accept the officers' argument, and hold that no reasonable officer in 1992 could have believed that the decision to seek and execute a no-knock warrant under these circumstances was consistent with clearly established law.

Both of the justifications articulated by the officers rely on an assumption that we cannot accept, and that any reasonable officer would have rejected as inconsistent with clearly established law in 1992 -- a belief that Gould, Sr. might use a weapon because of the criminal propensities of his children. If anything is a bedrock principle of our laws, it is that the law treats each of us as an individual. The law cannot abide the notion that a child's behavior can be sufficient, by itself, to deprive his father of constitutional rights. In this case, the officers knew at the time they applied for the warrant, and when they later broke down Gould's door with a battering ram, that

9

Gould, Sr. had no criminal history and was not involved in the armed robberies in any way. They also knew that Gould, Jr., the alleged perpetrator of the crimes under investigation, was in police custody. Given these circumstances, the officers essentially ask us to hold that a reasonable officer, in 1992, would have believed that a parent loses basic, Fourth Amendment protections in his own home when his children have been charged in a crime. We think it obvious that the officers' argument cannot be correct.

Another component of the officers' argument is that a no-knock warrant was justified because the officers sought to recover handguns from Gould's home. The officers recognize that Gould, Sr. had never been arrested, and they had no reason to believe he would use violence against the police. Nonetheless, the officers suggest that a reasonable officer would have believed that the presence of handguns at Gould's home, in and of itself, justified a departure from the knock and announce requirement. If the officers are correct, then the knock and announcement requirement would never apply in the search of anyone's home who legally owned a firearm. This clearly was not and is not the law, and no reasonable officer could have believed it to be so. We think a reasonable officer would have known that guns do not fire themselves, and that a justifiable fear for an officer's safety must include a belief, not simply that a gun may be located within a home, but that someone inside the home might be willing to use it.**2**

Finally, the officers argue that the state court judge's decision to grant the no-knock warrant prohibits a jury from deciding whether a

_____

**2** The officers' brief also suggests that police were involved in a shooting incident with one of Gould, Jr.'s brothers at Gould, Sr.'s home in 1991. The evidence in the record to support this assertion is scant. Furthermore, Gould points to evidence in the record to support his contention that the officers had no knowledge of this incident, if indeed it took place. Inasmuch as the qualified immunity question turns on this issue of fact (whether an incident took place at Gould's home in 1991, and whether the officers in this case were aware of it), we are without jurisdiction to review it. Johnson v. Jones, 515 U.S. 304, 311 (1995) (holding that defendant may not pursue interlocutory appeal of the denial of qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial").

10

reasonable officer would have believed that a no-knock warrant was justified under these circumstances. Contrary to the officers' argument, however, obtaining a warrant is not per se evidence of objective reasonableness. Malley v. Briggs, 475 U.S. 335, 345 (1986). In Malley, the Supreme Court rejected a police officer's contention, on the question of qualified immunity, "that he[was] entitled to rely on the judgment of a judicial officer in . . . issuing the warrant." Id.

> [W]here a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the [police] officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

Id. at 346 n.9. In this case, although the state court judge clearly neglected his duties in sanctioning a no-knock warrant under these facts, his incompetence does not excuse the officers' default in bringing the no-knock request to the judge in the first place, as well as their execution of the warrant later that morning.

In sum, we reject the officers' claim that the exigent circumstances doctrine was so poorly defined in 1992 that it could not have been considered clearly established law. We also reject the officers' alternative argument that the doctrine of exigent circumstances was well-defined, and that the circumstances in this case would have led a reasonable officer to fear for his safety in executing a search warrant at Gould's home. In October 1992, the law was clearly established that the circumstances of this case did not justify seeking or executing a no-knock warrant.

C.

In the final prong of the qualified immunity analysis, we must determine whether a reasonable person in the officers' position would

11

have known that his actions violated the right alleged by the plaintiff. This prong is the source of some confusion for the parties, who argue in their briefs about whether "reasonableness" is a question of law, to be decided by the court, or a question of fact that must be decided by a jury. See Appellants' Br. at 33 ("The district court erred in refusing to decide whether the Defendants acted reasonably."); Appellee's Br. at 22 ("[W]hether the officers' actions were objectively reasonable cannot be determined by way of summary judgment."). The parties misconstrue this part of the analysis, however, by arguing over whether the officers' behavior in this case was"reasonable." The question in qualified immunity is not whether the officers acted "reasonably" in the sense in which that term is used in tort law. The question is whether a reasonable person would have known about controlling law, once that law is deemed to have been clearly established under the second prong. The concept of objective reasonableness, as used in qualified immunity, is not a freestanding evaluation of the "reasonableness" of an officer's actions. Objective reasonableness provides that the qualified immunity analysis is an objective inquiry; it signals the Supreme Court's repudiation of a subjective qualified immunity standard, or "good faith" immunity, in Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982).

The parties' confusion on this matter is understandable, given that some courts define the right alleged by a § 1983 plaintiff at a very general level under the second prong and consider the specific factual circumstances under the third prong. In such cases, the second prong of the qualified immunity analysis becomes a pro forma recitation of a general constitutional right, and the real "work" (that is, the consideration of the specific facts of the case) is done under the third prong. See, e.g., Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996) (holding that the "right to be arrested only on probable cause" was clearly established and considering, under the third prong,"whether a reasonable person in [the officer's] position would have thought her actions violated that right"). But where, as here, we have defined the right in the second prong in a well-defined, fact-specific manner, the third prong will be quite easy to resolve, absent extraordinary circumstances:

> When the inquiry proceeds to [the third prong], "the immunity defense ordinarily should fail, since a reasonably com-

12

> petent public official should know the law governing his conduct," Harlow, 457 U.S. at 818-19; however, the defendant may still be able to show "extraordinary circumstances" and "prove that he neither knew nor should have known of the relevant legal standard." Id. at 819.

DiMeglio, 45 F.3d at 795 n.1 (citations omitted). The officers have offered no argument why, if their actions were in violation of clearly established law, a reasonable person would not have been aware of that law. Accordingly, the officers are not protected by qualified immunity.

IV.

For these reasons, we affirm the order of the district court denying the officers' motion for summary judgment based on qualified immunity. Because the officers' decision to seek and execute a no-knock warrant was in violation of clearly established constitutional law of which a reasonable person would have known, Gould is entitled to proceed in this action.

AFFIRMED

WILLIAMS, Circuit Judge, dissenting:

Today the majority holds that officers executing a no-knock search (pursuant to a warrant issued by a neutral and detached state circuit court judge that specifically authorized a no-knock search) at a home where a resident had shot at officers within the previous year are not entitled to qualified immunity. Because I am convinced that the officers' conduct did not violate Gould, Sr.'s clearly established constitutional rights, I respectfully dissent.

I.

As the majority correctly notes, police officers are entitled to qualified immunity if, in the performance of their duties, "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

13

U.S. 800, 818 (1982). For the reasons that follow, however, I disagree with the majority's conclusion that the officers' decision to seek and execute a no-knock warrant of Gould, Sr.'s home violated his clearly established Fourth Amendment rights.

As Fourth Circuit case law plainly indicated at the time of the officers' actions, exigent circumstances could excuse the failure to "knock and announce." See, e.g., Simons v. Montgomery County Police Officers, 762 F.2d 30, 32-33 (4th Cir. 1985) (noting that exigent circumstances justify the failure to "knock and announce"); cf. Wilson v. Arkansas, 115 S. Ct. 1914, 1918 (1995) (noting that not "every entry must be preceded by an announcement"). As a result, to avoid summary judgment on qualified immunity grounds, Gould had to allege facts demonstrating that the established contours of the "exigent circumstances" exception were sufficiently clear at the time of the incident such that the unlawfulness of the officers' actions was obvious. I submit that Gould, Sr. simply failed to allege such facts.

Without question, the failure to knock and announce prior to entering a home can be justified by a fear for officer safety. See, e.g., United States v. Jackson, 585 F.2d 653, 662 (4th Cir. 1978) (noting that the failure to "knock and announce" may be justified if there is a likelihood that the occupants will resist the police). Here, although Gould, Jr. was in police custody at the time of the search, the officers were aware of the extensive criminal history of his siblings. Indeed, there is evidence that officers were involved in a shooting incident with one of Gould, Jr.'s brothers at the Gould's home within the previous year. The majority, however, minimizes the danger that the officers reasonably believed they faced that night.* Although it was later determined that Gould, Jr.'s siblings were also in jail (on unrelated

_____

*The majority states that the officers believed that they would be in danger at Gould, Sr.'s home because the criminal history of his children warranted an inference that Gould, Sr. might be violent. See ante at 9. The officers did not, as the majority suggests, primarily argue that Gould, Sr. might use a weapon because of the criminal propensities of his children. Rather, the officers were concerned that one of Gould's children might use a weapon. Although it was later determined that all of Gould's children were in jail at the time of the search, the officers were not aware of that fact at the time of the incident.

14

charges) at the time of the search, the officers acted reasonably upon the evidence available to them at the time. Because"officers on the beat are not afforded the luxury of armchair reflection," Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996), cert. denied, 117 S. Ct. 2512 (1997), their actions must not be judged "with the 20/20 vision of hindsight," Graham v. Connor, 490 U.S. 386, 396-97 (1989). Accordingly, I believe that the officers' decision to seek and execute a no-knock warrant was objectively justified and reasonable.

Even assuming, as the majority argues, that at the time of the search the officers in question had no knowledge of the prior shooting incident at the Gould residence or of the criminal record of Gould, Sr.'s children, I believe that the contours of the"officer safety" exception to the "knock and announce" requirement were not clearly established in 1992 so as to make the unlawfulness of these officers' actions apparent. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (noting that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); Wilson v. Layne, 141 F.3d 111, 114 (4th Cir.) (en banc) (same), cert. granted, 119 S. Ct. 443 (1998). Although the majority contends that the unlawfulness of the officers' actions was apparent in 1992, it was only last year, 1997, that the Supreme Court stated that the officer safety exception would not justify a "no-knock" search "at a time when the only individuals present in a residence ha[d] no connection with the [criminal] activity." Richards v. Wisconsin, 117 S. Ct. 1416, 1421 (1997). Thus, although it is now clearly established that the officers' conduct -- as portrayed by the majority -- violated the "knock and announce" requirement, it was not clearly established that their conduct violated the "knock and announce" requirement in October 1992.

II.

Because I believe that the officers acted reasonably under the circumstances and, in the alternative, that there was a lack of clarity in the law governing the officer safety exception in October 1992, I would grant the officers qualified immunity.

15