Thomas SIMMONS, Guardian ad Litem for Omar Rhasheen Simmons, a juvenile, Plaintiff,

v.

Christopher "Chris" JUSTICE, Individually and in his capacity as a Law Enforcement Officer and as an Agent of the City of Spindale, North Carolina; the City of Spindale, North Carolina, a municipal corporation; Billy Conner, Individually and in his capacity as a Law Enforcement Officer and as an Agent of the City of Spindale, North Carolina; Chief Jack Conner, Individually and in his capacity as an Agent of the City of Spindale, North Carolina; and T. Eugene Mitchell, Attorney, Individually and in his capacity as an Agent of the City of Spindale, Defendants.

No. CIV. 1:99CV141.

United States District Court,
W.D. North Carolina.
Asheville Division.

Feb. 25, 2000.

Michael Lee King, Salisbury, NC, for Plaintiff/Petitioner.

Frank J. Contrivo, Asheville, NC, for Deft. Justice, Sandra M. King and John T. Tutterow, Asheville, NC, for Defts. City of Spindale, Billy Conner, Jack Conner and T. Eugene Mitchell, for Defendant/Respondent.

## *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Also before the Court are Defendants' Motions to Dismiss, Defendants' Motion to Compel Discovery, Defendants' Motion to Strike and Sanction, Plaintiff's Motion to Amend Complaint, Plaintiff's Motion for Appointment of a Guardian Ad Litem, and Plaintiff's Motion for Sanctions. The Court declines to adopt the recommendation of the Magistrate Judge and denies Defendants' Motions to Dismiss for the reasons set forth below.

### I. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a magistrate judge's Memorandum and Recommendation to which specific objections are filed. 28 U.S.C. § 636(b).

"The district judge must not be a rubber stamp" and "has a duty to reject the Magistrate Judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 Wright & Miller, *Federal Practice and Procedure* § 3070.2 (1997). Those parts of a magistrate judge's Memorandum and Recommendation to which no specific objections are filed are given careful review. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982).

The motion to dismiss is based on the failure of the complaint to state causes of action upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the Plaintiff's complaint and must construe those facts in the light most favorable to the Plaintiff.... [Dismissal may occur] only if it appears beyond doubt that the Plaintiff can prove no set of facts in support of their claim that would entitle them to relief." *Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997). "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." Shepard's *Motions in Federal Court,* § 5.123, at 366 (2d ed.1991). If "relief could not be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### II. FACTUAL AND PROCEDURAL BACKGROUND

Construing the pleadings in a manner most favorable to the Plaintiff, the facts are alleged as follows.

On July 13, 1996, at 3:45 a.m., Omar Rhasheen Simmons ["Omar"] was riding a bike down Main Street in Spindale, North Carolina. Amended Complaint, filed September 20, 1999, at ¶ 30. At that time, Omar, an African–American, was 14 years old. *Id.,* at ¶ 29. When he saw two police

officers and their police dog, Omar jumped off the bike and ran. *Id.*, at ¶ 36. Defendant Officers Christopher Justice and Billy Conner allegedly deployed the police dog to subdue Omar. *Id.*, at ¶ 38. Plaintiff contends that the dog attacked and bit Omar, causing open flesh wounds on his back which required medical attention and left permanent scars. *Id.*, at ¶ 39. Omar contends he had prior knowledge that Officer Justice had recently used the police dog on another African–American male, causing severe injuries to that individual. *Id.*, at ¶ 35. Thus, he ran from the officers and their dog to avoid a similar encounter. *Id.*, at 36. Omar further contends that he only heard the barking of the police dog and did not hear if the Officers shouted for him to stop. *Id.*, at ¶ 37. After the attack by the police dog, Omar alleges he was handcuffed and arrested by the Defendant Officers and then interrogated without the benefit of a parent and without being advised of his constitutional rights. *Id.*, at ¶ 41. Omar was charged with resisting, delaying, and obstructing an officer as a juvenile delinquent. *Id.*, at ¶ 44.

Plaintiff alleges that the Defendant Officers, as well as Police Chief Jack Conner and City Attorney Eugene Mitchell conspired to cause the wrongful prosecution of Omar in an attempt to "cover up" the illegal dog attack. *Id.*, at ¶ 47. Specifically, Plaintiff alleges that Officer Justice fraudulently altered and amended the initial juvenile petition charging Omar to cover up the officers' wrongdoings. *Id.*, at ¶ 46. As a result of this fraudulent alteration, Omar was tried in contravention of the North Carolina Juvenile Code, which requires that before a juvenile can be brought to trial and tried as a juvenile delinquent, the initial juvenile petition must be approved by either the Juvenile Court Counselor or the Prosecutor. *Id.*, at ¶ 45–46. In addition, Plaintiff alleges that attorney Mitchell and Chief Conner caused a document to be drafted which would have exonerated Officer Justice and then

attempted to pressure and coerce Thomas Simmons, Omar's father and now guardian ad litem, into signing this document. *Id.*, at ¶ 47(b). Plaintiff also alleges that Mitchell and Chief Conner perjured themselves in North Carolina District Court by alleging that Officer Justice had not used his police dog on the night of the incident. *Id.*, at ¶ 47(c). Finally, Plaintiff alleges that, prior to July 13, 1996, Mitchell, Chief Conner, and the City of Spindale had been on notice of Officer Justice's illegal use of his police dog against African–American citizens by official citizen complaints, but had taken no action to rectify the situation. *Id.*, at 48.

Omar Simmons' subsequent criminal conviction on this charge was reversed on appeal by the North Carolina Court of Appeals. *Id.*, at ¶ 49. Thomas Simmons then filed this action on Omar's behalf pursuant to 42 U.S.C. §§ 1983, 1985, 1986, as well as supplemental state-law claims. Complaint, filed July 14, 1999. This action was filed three years and one day after the alleged unlawful incident.

The Defendants moved to dismiss,[1] claiming the statute of limitations had expired. Motion to Dismiss and Answer on behalf of City of Spindale, North Carolina, Billy Conner, Chief Jack Conner, and T. Eugene Mitchell, filed August 23, 1999, at 10. The Magistrate Judge agreed and recommended that the action be dismissed. Memorandum and Recommendation, filed November 8, 1999, at 5. Counsel for both sides have made accusations of misconduct and have moved for sanctions, mostly stemming from discovery difficulties. Defendants' Motion to Strike and Sanction, filed November 8, 1999; Defendants' Motion to Compel Discovery, filed November 5, 1999; Plaintiff's Response to Defendants' Motion to Compel Discovery and Motion for Sanctions, filed November 19, 1999. Further, Plaintiff has moved that he be appointed as Omar's guardian ad litem, a procedure overlooked when the action

---

1. Defendants actually filed two Motions to Dismiss, as Defendant Justice is represented by separate counsel. Because Officer Justice's motion raises substantially the same arguments, the two motions will be considered together.

was begun. Plaintiff's Rule 17(c) Motion to Appoint, filed November 4, 1999.

## III. DISCUSSION

### A. The Statute of Limitations Is Not a Bar to Plaintiff's Claims

■ Defendants assert Plaintiff's action is barred by the statute of limitations. For claims brought under 42 U.S.C. § 1983, "the statute of limitations is imported from state law." [2] *Nasim v. Warden, Maryland House of Correction,* 64 F.3d 951, 955 (4th Cir.1995) (en banc). For § 1983 suits brought in North Carolina, three years is the applicable limitations period. *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1161 (4th Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992) (looking to N.C. Gen.Stat. § 1–52(5) as the analogous state statute) (citations omitted). Because the alleged incident in this action took place on July 13, 1996, and Plaintiff did not bring this action until July 14, 1999, Defendants contend that the statute of limitations has run by one day. However, in order to protect the interests of infants, who lack the capacity to bring or defend against a lawsuit, the statute of limitations does not begin to run against infants until they reach the age of majority, or until appointment of a general guardian, next friend, or guardian ad litem. N.C. Gen.Stat. § 1–17(a)(1). Because Omar was 14 years old when the alleged incident took place, and even now is only 17 years of age, the statute of limitations has not begun to run against him.

■ Defendants cite *Teele v. Kerr,* 261 N.C. 148, 134 S.E.2d 126 (1964), for the proposition that where an infant is represented by a "general guardian" when the cause of action accrues, the statute of limitations immediately begins to run because the guardian is able to protect the infant's interests.[3] Defendants contend that Thomas Simmons is Omar's general guardian because the caption of the complaint reads, "Thomas Simmons, guardian for Omar Rhasheen Simmons," and because in the third paragraph of the Complaint, Thomas Simmons asserts he is Omar's biological father, legal custodian and guardian. Amended Complaint, at ¶ 5. Although Defendants do correctly cite a rule of law in North Carolina, it does not bar Plaintiff's lawsuit because Thomas Simmons was not Omar's general guardian at the time the cause of action accrued.

The exception to which Defendants refer was explained in detail by the North Carolina Supreme Court in *Rowland v. Beauchamp,* 253 N.C. 231, 116 S.E.2d 720 (1960). Under the *Rowland* doctrine, where an infant is represented by a guardian, there is no need to suspend the running of the statute of limitations because the infant, through the guardian, has the capacity to bring suit. 253 N.C. at 234, 116 S.E.2d at 722. However, it remains the strong interest of the courts of North Carolina to protect the rights of infants. Thus, as recognized by the Fourth Circuit, in North Carolina the statute of limitations will only begin to run against an infant where the guardian is *appointed* in accordance with established procedures and standards.[4] *Genesco, Inc. v. Cone Mills Corp.,* 604 F.2d 281, 285 (4th Cir.1979).

■ In *Genesco,* a case involving a natural mother who filed a tort action on

---

**2.** Likewise for claims under 42 U.S.C. §§ 1985, and 1986. *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996).

**3.** The specific passage cited by Defendants reads as follows:

It is the rule in North Carolina that ... the statute of limitations begins to run against an infant who is represented by a general guardian as to any action which the guard-

ian could or should bring, *at the time the cause of action accrues.*
261 N.C. at 150, 134 S.E.2d at 127 (emphasis added by Defendants).

**4.** The North Carolina General Statutes set out those procedures in detail. N.C. Gen.Stat. § 35A–1201, *et seq.* Application for appointment as a guardian for a minor is made to the Clerk of Superior Court. *Id.,* at § 1221. The clerk "shall receive evidence necessary to de-

behalf of her infant daughter, the Fourth Circuit noted that:

> It has long been the law in North Carolina that a next friend or guardian Ad litem cannot step forward and assume on his own the authority to prosecute the infant plaintiff's suit; rather, his authority is based on appointment by the court.
>
> . . . . .
>
> Under the *Rowland* doctrine, the North Carolina statute of limitations runs against an infant when he has a legal guardian who is charged with the duty of bringing suit on his behalf. If the guardian does not protect the infant's interests by bringing suit within the period of limitations, the infant ... may lose important and valuable rights by default. As a result, in the courts of North Carolina, *even the parent or other natural guardian of the infant cannot step forward as self-appointed guardian Ad litem,* nor will the courts make such appointments in a perfunctory manner.

*Id.,* at 285–86 (emphasis added). Thus, even a parent bringing suit on behalf of their own child will not start the running of the statute of limitations against the infant unless the parent is that child's court appointed guardian. *Id.,* at 286.[5]

*Teele v. Kerr,* the principal case cited by Magistrate Judge Cogburn, further illustrates how strongly the courts of North

Carolina will guard the interests of an infant. *Teele, supra.* In *Teele,* the natural father of a young boy properly filed with the Clerk of Superior Court as the boy's next friend in order to pursue a tort action resulting from an auto accident. *Id.,* 261 N.C. at 149, 134 S.E.2d at 127. The father won a money judgment on the boy's behalf, but did not seek to enforce the judgment. Over ten years later when the boy filed suit to recover on the judgment, the defendant argued that the statute of limitations had run because the father had failed to enforce the judgment on behalf of his son. *Id.* However, the North Carolina Supreme Court held that the appointment of an infant's father as next friend to prosecute a tort action on the infant's behalf did not impose on the father, once a favorable judgment in the tort action had been obtained, the duty to bring an action to enforce the judgment. *Id.,* at 151, 134 S.E.2d at 129. Thus, the statute of limitations on the action to enforce the judgment did not begin to run until the infant reached the age of majority. *Id.*

The issue before this Court is whether Omar Simmons was represented in North Carolina by a duly appointed guardian at the time the alleged cause of action accrued. The answer is he was not. As discussed above, absent official approval as a guardian, *no attempt* by Mr. Simmons to represent Omar's interests will start the statute of limitations running against his son.[6]

termine whether ... a general guardian is required." *Id.,* at § 1223. "After considering the evidence, the clerk shall enter an appropriate order." *Id.,* at § 1226. "In all cases, the clerk shall specify in the order and letters of appointment whether the guardian is a guardian of the estate, a guardian of the person, or a general guardian." *Id.,* at § 1206. When these procedures are completed, a guardian is considered "duly appointed and qualified under this Subchapter." *Id.*

**5.** Furthermore, the *Rowland* doctrine applies only when a guardian is authorized to bring suit for the infant on the specific claim in question. *Genesco,* 604 F.2d at 286. Thus, the statute of limitations runs only on those causes of action " 'which the guardian might bring and which it was incumbent on him to

bring, in so far as may be consistent with the limitations of his office.' " *Id.* ( quoting *Johnson v. Pilot Life Ins. Co.,* 217 N.C. 139, 144, 7 S.E.2d 475, 477 (1940)).

**6.** Mr. Simmons submitted information from his settlement agreement in the Florida divorce in which he received legal custody of Omar. However, this divorce settlement is not relevant to the issue of whether Omar was represented in North Carolina by a general guardian at the time his cause of action accrued. Even if a Florida court had appointed Thomas Simmons as Omar's general guardian, which is not the case, that would not be sufficient to start the statute of limitations running against Omar in North Carolina. *Genesco,* 604 F.2d at 288 (guardian must be appointed in North Carolina).

Plaintiff has moved to have Thomas Simmons appointed as Omar Simmons' guardian ad litem for the purposes of this lawsuit. Plaintiff's Rule 17(c) Motion to Appoint Thomas Simmons as Omar Rhasheen Simmons' Guardian Ad Litem, filed November 4, 1999. Although Plaintiff's counsel erred by not having Thomas Simmons appointed as Omar's guardian ad litem prior to filing this lawsuit, this mistake does not prejudice or inconvenience Defendants. Until a court appoints a guardian to represent Omar Simmons' interests in this matter, the statute of limitations would not run and Omar could bring this suit himself when he reaches the age of majority. *Genesco,* 604 F.2d at 286. Consequently, Defendants are not prejudiced by allowing this lawsuit to proceed.[7]

Pursuant to its broad discretion under Fed.R.Civ.P. 17(c), the Court will allow Plaintiff's motion to have Thomas Simmons appointed as Omar Simmons' guardian ad litem in this matter and will treat the motion as a second motion to amend the Complaint. As a result of this ruling, Thomas Simmons' status as Omar Simmons' guardian ad litem relates back to the filing of this lawsuit, as requested by Plaintiff in his motion. Because the statute of limitations only began running against Omar Simmons on that date, the Court finds Plaintiff's action to be timely filed.

## B. Police Officers Do Not Have Qualified Immunity

Defendants assert the law enforcement officers involved in this incident have qualified immunity for actions taken in the performance of their duty. Law enforcement officers are entitled to qualified immunity from liability for civil damages, but only to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In considering a qualified immunity defense, the Court uses a three-part analysis. First, the Court must identify the right allegedly violated; second, the Court must decide whether the right was clearly established at the time of the alleged violation; and third, the Court must determine whether a reasonable person in the officer's position would have known that his or her actions violated that right. *Gould v. Davis,* 165 F.3d 265, 272 (4th Cir.1998).

The Court's first task is to "identify the specific right that the plaintiff asserts was infringed by the challenged conduct." *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998) (en banc), *aff'd,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Circuit has held that an attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation. *Vathekan v. Prince George's County,* 154 F.3d 173, 178 (4th Cir.1998); *Kopf v. Wing,* 942 F.2d 265, 269 (4th Cir. 1991) (the improper deployment of a police dog that mauls the target constitutes excessive force). A police officer acts unreasonably if he or she deploys a police dog on a suspect without first giving a verbal "forewarning that the police dog is going to attack." *Id.,* at 268 (summary judgment was not proper for officers because a reasonable jury could find that the degree of

---

7. Defendants also admonish the Plaintiff for trying to take a "second bite out of the apple" by attempting to provide an additional response to Defendants' motion to dismiss. However, Defendants did not raise the general guardian argument until their Reply to Plaintiff's Response to Defendants' Motion to Dismiss. Moreover, Defendants failed to provide a brief in support of their Motion to Dismiss, as required under Local Rule 7(2). Plaintiff is therefore allowed the opportunity to respond to the arguments which Defendants later advanced in support of their motion.

force used, deploying a dog without a verbal warning, was not objectively reasonable); *Massey v. Prince George's County*, 907 F.Supp. 138, 141 (D.Md.1995) (summary judgment was not proper where the officers allegedly deployed a police dog on the plaintiff without a verbal warning); *Vathekan*, 154 F.3d at 178 (same). In the Complaint, Plaintiff contends that all Omar heard was the barking of the police dog as he ran from Officers Justice and Conner. Amended Complaint, at ¶ 37. Thus, Plaintiff's second cause of action has sufficiently alleged a violation of Omar Simmons' specific right to be free from excessive force in the course of a Fourth Amendment seizure brought about by a police dog deployed without a verbal warning.[8]

█ In the second prong of the qualified immunity analysis, the Court must determine whether the right at issue was clearly established at the time of the incident. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir.1996). The Court "must inquire whether the established contours of the [right] were sufficiently clear at the time of the attack to make it plain to reasonable officers that their actions under these particular circumstances violated" Plaintiff's rights. *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir.1997) (en banc). In the Fourth Circuit, it has been "clearly established [since 1991] that failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment." *Vathekan*, 154 F.3d at 179 (citing *Kopf*, 942 F.2d at 268). The alleged

incident in this case took place on July 13, 1996, and Plaintiff's rights under the Fourth Amendment had been clearly established in this Circuit. *Id.*

█ In the final prong of the qualified immunity analysis, the Court must determine whether a "reasonable person in the officer's position would have known his actions violated the right alleged by the plaintiff." *Gould*, 165 F.3d at 272. This is not a question of whether the officers acted "reasonably" under the circumstances, as Defendants seem to argue. Instead, the inquiry is one of objective reasonableness which focuses on whether a reasonable person in the officers' position would have known about the controlling law at the time of the incident in question. *Id.*, at 273. The conduct alleged by Plaintiff, which the Court must view as truthful, has been objectively unreasonable in the Fourth Circuit since 1991. *Vathekan*, 154 F.3d at 179. In other words, a trained police officer with a police dog in 1996 should have been aware of the established law requiring a verbal warning before deploying the dog in the course of an arrest.[9]

Viewing Plaintiff's allegations in the light most favorable to him, the conduct of the Defendant law enforcement officers was objectively unreasonable and a violation of Omar Simmons' Fourth Amendment rights. These rights were clearly established in 1996 and a reasonable person in the officer's position should have known about them. Consequently, at this stage of the proceedings, Officers Justice and Connor do not have qualified immunity for their alleged actions.[10]

---

8. Plaintiff's first, fourth, and fifth causes of action are all asserted in the alternative to the second cause of action. The Court will, therefore, merge all of these claims together under the second cause of action.

9. Defendant officers are entitled to present evidence indicating why they should not have been aware of the relevant law, if that was indeed the case:

When the inquiry proceeds to [the third prong], "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law govern-

ing his conduct;" however, the defendant may still be able to show "extraordinary circumstances" and "prove that he neither knew nor should have known of the relevant legal standard."

*Gould*, 165 F.3d at 273 (quoting *Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727). No such evidence is before this Court.

10. Defendants also contend that Omar's arrest was made with probable cause and therefore is not actionable nor unlawful. Response to Plaintiff's Objections to the Memorandum and Recommendation, filed Decem-

## C. Plaintiff States a Valid § 1983 Claim Against the City of Spindale

 Plaintiff also states a valid § 1983 claim against the City of Spindale. Municipalities and counties can be liable for constitutional deprivations under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability "is derivative of, but narrower than" the liability of individual officers. *Kopf,* 942 F.2d at 269 (citing *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987)). Plaintiff will prevail against the city if excessive force was used against Omar and "this use of force was caused by an unconstitutional custom or practice of the [city]." *Kopf,* 942 F.2d at 269. In the context of police brutality, two theories predominate:

> The principal theory locates fault in deficient programs in police training and supervision which are claimed to have resulted in constitutional violations by untrained or mistrained police officers. A second theory, sometimes imprecisely subsumed under the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.

*Id.* (quoting *Spell,* 824 F.2d at 1389). Under the pleadings, the second theory becomes directly applicable to this lawsuit. Plaintiff alleges that Officer Justice had previously and improperly deployed a police dog against African–Americans in Spindale prior to the incident involving Omar Simmons. Amended Complaint, at ¶ 35. In particular, Plaintiff describes an incident two weeks before involving a black minister who was allegedly bitten by Officer Justice's dog while lying handcuffed on the ground. *Id.; Wilkerson v. Thrift,* Civil No. 1:99cv127–T. Plaintiff further asserts that numerous citizen complaints had been lodged with the City of Spindale prior to the attack on Omar. *Id.,* at ¶ 48(c). Viewing these allegations in the light most favorable to him, the Plaintiff has alleged the City of Spindale knew about these improper acts and failed to put a stop to them. Therefore, Plaintiff has stated a viable § 1983 claim against the City of Spindale.[11] *Kopf,* 942 F.2d at 269 (no summary judgment for county in police dog-bite incident); *Massey,* 907 F.Supp. at 141 (same); *Vathekan,* 154 F.3d at 181 (same).

## D. Adequate State Remedies

 Defendants correctly contend that where Plaintiff has an adequate state remedy for the alleged acts of the Defendants, Plaintiff may not assert a direct claim under the North Carolina Constitution. *Corum v. University of North Carolina,* 330 N.C. 761, 783–787, 413 S.E.2d 276 (1992). In the Amended Complaint, Plaintiff's Fourth, Fifth, and Sixth causes of action are asserted under the North Carolina Constitution. Amended Complaint at ¶'s 73–93. This Court has previously consolidated the Fourth and Fifth causes of action under Plaintiff's Second cause of action, leaving only the Sixth

ber 2, 1999, at ¶ 2(d). Assuming that Omar Simmons was arrested with probable cause, the use of excessive force is an actionable violation of the Fourth Amendment.

11. Defendants cite *City of Canton v. Harris,* 489 U.S. 378, 38[8], 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), in support of their argument that Plaintiff has not shown any "deliberate indifference" on the part of the City of Spindale as is required to show a viable § 1983 claim. Defendants' Response to Plaintiff's Objections to the Memorandum and Recommendation, filed December 2, 1999, at ¶ 2(e). However, this requirement applies only to a "failure to train" allegation.

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

489 U.S. at 388, 109 S.Ct. 1197. Because Plaintiff is not alleging "failure to train," this authority is not applicable to his § 1983 claim. For liability to attach to the City of Spindale, Plaintiff will have to prove the city irresponsibly failed "to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." *Kopf,* at 262.

cause of action which states a claim under the North Carolina Constitution. That cause of action asserts a violation of Art. 1 § 19 of the North Carolina Constitution, and in the alternative, a common law claim for malicious prosecution. *Id.*, at ¶'s 87–93. Because an adequate state remedy exists, Plaintiff may not assert this direct claim under the state constitution. The claim for malicious prosecution will remain as Plaintiff's Sixth cause of action.[12]

### E. Under Color of State Law

 Defendants also argue the claims against T. Eugene Mitchell must be dismissed because he did not act under color of state law, as required in a § 1983 claim.[13] Defendants argue Mitchell was a privately-retained attorney who merely offered legal counsel and services to the City of Spindale.[14] However, the Supreme Court has held that an "otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)). Plaintiff alleges that Mitchell was employed by the City of Spindale, and that he conspired with the other defendants to deprive Omar Simmons of his Constitutional rights. Amended Complaint, at ¶'s 7, 47–48. The Court is obligated to take these allegations as true and view them in the light most favorable to the Plaintiff. *Flood*, 125 F.3d at 251. Thus, at this stage of the litigation, the Court must consider Mitchell to be capable of acting under color of state law as Plaintiff alleges.

### F. Motion to Compel Discovery and Motions for Sanctions

 Finally, Defendants have moved to compel discovery and for sanctions, claiming Plaintiff's counsel has unreasonably refused to respond to any discovery requests. In the motion, defense counsel describes attempts by the parties to settle the case and attaches as an exhibit a handwritten note disclosing the sum of money allegedly demanded by Plaintiff's counsel to settle the case. Settlement amounts or negotiations relating thereto should be placed before the Court *only* upon request by the Court made subsequent to approval by all parties.

Moreover, the interrogatories attached to the motion contain merely the open-ended request that Plaintiff "[s]tate with specificity and particularity all facts on which Plaintiff relies in making the allegations" of various paragraphs of the complaint. The request for the production of documents contains demands for the complete copy of the record on appeal concerning the juvenile adjudication of Omar Simmons, a copy of written statements given by Defendants Conner, Mitchell or other persons, a copy of correspondence between Plaintiff and any agent of the Defendants, copies of all newspaper articles and videotaped footage concerning this incident and copies of press releases given to the press. In addition to the fact that the requests are not limited to the prior criminal mat-

---

**12.** Defendants contend that Plaintiff's state law claims, including the claim for malicious prosecution, are barred by the statute of limitations. For the same reasons as detailed above regarding the federal claims, Plaintiff's claims are timely.

**13.** To assert a § 1983 claim, Plaintiff must allege that 1) the defendant was acting under color of state law at the time the acts complained of where committed; and 2) the defendant deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir.1994).

**14.** However, although the independent exercise of professional judgment may otherwise indicate that a defendant did not act under color of state law, it is not relevant where the state employs the professional to fulfill the state's constitutional obligations. *Conner*, 42 F.3d at 224 (citing *West v. Atkins*, 487 U.S. 42, 53 n. 10, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). Consequently, a professional employed by the state to fulfill the state's constitutional obligations acts under color of state law. *Id.*

ter, they also require Plaintiff's counsel to obtain items which may not be in his possession.

▮ As observed by Plaintiff's counsel, under the Federal Rules of Civil Procedure, no party can be forced to engage in discovery until an initial attorneys' conference has been conducted. Fed.R.Civ.P. 26(f). Under the Local Rules, that conference is required to occur within fifteen days of the filing of the last required responsive pleading. LR16.1(A). Because Defendants have filed motions to dismiss, that pleading has not yet been filed. Plaintiff's counsel advises no such conference has been held; defense counsel makes no comment concerning the conference, referring only to a settlement conference. However, Rule 26(f) requires more: a meeting or conference to "make or arrange for disclosures required by subdivision (a)(1), and to develop a proposed discovery plan." Fed.R.Civ.P. 26(f). The Rule also requires the attorneys to submit a written report to the Court within ten days thereafter outlining the plan. *Id.* None of this has occurred and the motion to compel is, at best, premature.

Finally, Rule 37 requires any motion to compel discovery to "include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed.R.Civ.P. 37(a)(2)(A). Such a certification is absent from this motion.

Both sides have moved for the imposition of sanctions. Clearly, this litigation has had a vituperous start. Further pursuit at this time of the issue of sanctions would do nothing toward encouraging a cooperative spirit. Counsel are admonished to maintain a professional demeanor with each other in their dealings both in and out of court. The motions are denied.

The Court at this time instructs counsel for both parties to become familiar with *Kopf v. Wing,* and *Vathekan v. Prince George's County,* as these cases are the controlling law in this Circuit for § 1983 claims involving police dog-bite incidents.

Because these cases are directly on point, they should have been brought to the Court's attention in some meaningful way by counsel for both parties. *Massey, supra* (The Court admonished counsel for both plaintiff and defendants for the failure to bring *Kopf* to the Court's attention and ordered defendants' counsel to show cause why they had failed to do so).

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Appoint Thomas Simmons as Omar Simmons' Guardian Ad Litem, treated as a Second Motion to Amend the Complaint, is **GRANTED.** Thomas Simmons is hereby appointed guardian ad litem for the purpose of representing Omar Rhasheen Simmons' rights in this action. This appointment shall relate back to the original filing date of the Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's First, Fourth, and Fifth causes of action are consolidated under Plaintiff's Second cause of action which correctly alleges a violation of Omar Simmons' Fourth Amendment rights.

**IT IS FURTHER ORDERED** that Plaintiff's Sixth cause of action, the claim asserted under Art. 1 § 19 of the North Carolina Constitution is hereby **DISMISSED,** leaving only the common law claim for malicious prosecution.

**IT IS FURTHER ORDERED** that the Motions to Dismiss filed by Defendant Christopher Justice and the remaining Defendants are hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' Motion to Compel Discovery is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike and Sanction and Plaintiff's Motion to Sanctions are **DENIED** and the parties are instructed to conduct themselves professionally and move forward with this lawsuit.